IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRACY THOMAS,

    Plaintiff,

v.                                                Case No. 2:13-CV-2248-JTM

LOUISVILLE LADDER, INC.,

    Defendant.

**MEMORANDUM AND ORDER**

    Plaintiff Tracy Thomas seeks monetary damages from defendant Louisville Ladder, Inc. for alleged negligence, manufacturing defect, failure to warn, design defect, and breach of implied warranty. This matter is before the court on plaintiff's eight (8) Motions in Limine (Dkts. 75, 77, 79, 81, 83, 85, 87, 89) and defendant's two (2) Motions in Limine (Dkts. 93, 111).

    **I.    Factual and Procedural Background**

    This case arises from a July 22, 2010, incident during which plaintiff alleges that she was injured by an extension ladder manufactured by defendant's predecessor-in-interest, Cuprum. In 1992, plaintiff purchased a twenty-foot aluminum Cuprum model 385-20 Type III extension ladder with a 200-pound load capacity from Westlake Ace Hardware in Shawnee, Kansas. More than eighteen years later, on July 22, 2010, plaintiff was using this ladder to clean out her gutters and look at her roof. Plaintiff alleges that, while she was on the ladder, approximately four feet off the ground, the extension locking hooks falsely locked, causing the ladder to fully collapse while plaintiff was on it. As a result, plaintiff claims that she slid down the ladder, got caught

1

between its rungs, and ultimately fell to the ground with the ladder coming down on top of her. Plaintiff initially alleged that she suffered physical injuries to her wrist, knee, and heel, as well as a severe traumatic head injury. During the pretrial conference, however, plaintiff withdrew her claim of a severe traumatic head injury and instead asserted that she suffers from psychological and psychiatric issues as a result of the incident.

On July 13, 2012, plaintiff filed suit against defendants Louisville Ladder, Inc., Westlake Hardware, Inc., and Ace Hardware Group in the district court of Johnson County, Kansas, case number 12CV5630, alleging negligence, manufacturing defect, failure to warn, design defect, and breach of implied warranty of merchantability for which she sought, *inter alia*, damages for lost profits. Dkt. 1-1. On April 25, 2013, plaintiff voluntarily dismissed without prejudice defendants Westlake and Ace. Dkt. 1-2. On May 23, 2013, defendant removed plaintiff's action to the United States District Court, District of Kansas citing jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332 (Dkt. 1). On October 20, 2014, this court granted partial summary judgment in favor of defendant on the issue of lost profits (Dkt. 67). The court held a three-day jury trial beginning January 27, 2015, after which the jury returned a verdict for defendant.

## II.     Analysis

**A.     Plaintiff's Motions in Limine**

### 1.     Motion to bar any mention of plaintiff's counsel's law firm, Brown & Crouppen, P.C. (Dkt. 75)

Plaintiff requests that the court prohibit defendant from making any mention of plaintiff's counsel's law firm, Brown & Crouppen, P.C. According to plaintiff, Brown & Crouppen is a large law firm that advertises extensively in the Kansas City area. Because of this advertisement, plaintiff fears that jurors will likely have opinions of the law firm that are irrelevant and

potentially prejudicial to her.  Defendant opposes this request, alleging plaintiff has not provided any evidence that the reputation of counsel's law firm could potentially negatively impact her case.  Moreover, defendant assures the court that it has no intention of disparaging plaintiff's choice of counsel in any fashion, including referring to the firm's advertising methods.  Rather, defendant merely seeks, during *voir dire*, to determine whether any potential juror is familiar in any fashion with plaintiff's counsel's law firm.

While mention of plaintiff's counsel's law firm is not particularly relevant to the issues at hand, to prevent defendant from so mentioning would likely create issues on *voir dire*.  For example, instead of simply asking potential jurors if they have any connection to the law firm of Brown & Crouppen, defendant would have to hint around at such a possible connection.  This seems unnecessary, given that a connection could be established with a simple yes or no answer from the potential juror if asked directly.  And, in reality, such vague and roundabout questioning in an attempt to learn this information is likely to draw *more* attention to the law firm.

Plaintiff claims that identification of the law firm would be "confusing, unduly prejudicial, lacking any probative value, misleading, and a waste of time."  She fails, however, to offer any justification in support of this claim.  Defendant has assured the court that it does not intend to go outside the parameters of proper questioning on a juror's familiarity with the firm and certainly does not plan on disparaging the law firm in any way, including mention of its advertising methods.

Therefore, plaintiff's motion to bar any mention of plaintiff's counsel law firm, Brown & Crouppen, P.C. is denied.  The parties shall be allowed to not only mention the name of the firm during *voir dire* and opening statements, but also to make reference to the firm's advertising

3

methods. However, once evidence is entered and the trial is underway, the parties shall refrain from any mention of plaintiff's counsel's law firm.

### 2. Motion to bar any mention of collateral source benefits (Dkt. 77)

Plaintiff's medical records are replete with mentions of payments for her medical treatment by sources unrelated to defendant and/or this case. She therefore seeks to invoke the collateral source rule to prohibit any mention of benefits paid and/or payments made by sources separate and distinct from defendant, including insurance, Medicaid, Medicare, Social Security, and unemployment. It seems that plaintiff is really only seeking to prohibit mention of the actual *source* of these payments, not that payments were indeed made by outside sources or the *amount* of those payments. Defendant agrees and notes that it does not intend to enter into evidence the *source* of the payments, only the amount of the payments themselves. In fact, the parties have stipulated that the amount necessary to satisfy all of plaintiff's medical bills arising from the incident in question is $135,000. Dkt. 108.

Under the Kansas collateral source rule, "benefits received by a plaintiff from a source independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." *Davis v. Mgmt. & Training Corp. Ctrs.*, 2001 U.S. Dist. LEXIS 8361, at *5 (D. Kan. May 30, 2001) (citing *Gregory v. Carey*, 246 Kan. 504, 791 P.2d 1329, 1333 (Kan. 1990)). As such, there is no question that the *sources* of any collateral payments are not admissible. *See id.* While the courts have discussed at length how the payment of benefits and/or write-offs affect how *much* a plaintiff may be able to recover from a defendant, they have yet to rule that the *amount* already paid by an outside source is not admissible.

Therefore, plaintiff's motion to bar any mention of the *source* of collateral source benefits is granted. The motion to bar mention of the amount of collateral source benefits paid is denied, as the parties have stipulated that the amount is $135,000.

### 3. Motion to bar any suggestion that the ladder was manufactured by some other entity that would shield defendant from liability (Dkt. 79)

It has been stipulated that the actual manufacturer of the ladder in question was Cuprum, a corporation that merged with defendant in 1996. Dkt. 108. Plaintiff seeks to bar defendant from suggesting that it should be absolved from liability because Cuprum, not Louisville Ladder, manufactured the ladder. Plaintiff argues that such a suggestion serves no purpose and would only confuse the issues for the jury. Defendant agrees and states that it has no intention of arguing against its potential liability simply because its predecessor in interest, Cuprum, actually manufactured the ladder at issue. As a result, the parties have stipulated as follows:

> Cuprum manufactured the ladder at issue in 1992. Subsequent to the manufacture of Ms. Thomas's ladder, Louisville Ladder Inc. acquired Cuprum. Louisville Ladder Inc. has agreed to take responsibility for Ms. Thomas's ladder, if it is found that Ms. Thomas is entitled to a recovery in this trial.

Dkt. 108.

However, it seems that plaintiff is also seeking to prevent *any* mention of Cuprum at all. Defendant alleges that such a prohibition would be confusing for the jury, as Cuprum's name is on various documents that will be introduced at trial. Defendant also suspects that plaintiff will attempt to enter into evidence products that were offered by defendant when it was still a competitor of Cuprum. The fear is that, if this request is granted, plaintiff will essentially be allowed to confuse the jury into believing that the ladder was manufactured by defendant when it was not.

Kansas law states that "[w]hen any merger or consolidation has become effective under this act . . . all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to such surviving or resulting corporation, and may be enforced against it to the same extent as if such debts, liabilities and duties had been incurred or contracted by it." K.S.A. § 17-6709(a).

Here, the parties have stipulated that defendant may be held liable for plaintiff's injuries. However, to prevent *any* mention of Cuprum has the potential to be confusing and ultimately misleading to the jury. Therefore, the court grants plaintiff's motion to the extent that defendant attempts to argue against possible liability on the grounds that it is a successor in interest to the actual manufacturer. It denies plaintiff's motion to bar *any* mention of Cuprum at all. The parties may freely reference Cuprum and its role in this case.

**4.     Motion to bar mention of the ladder slipping out from under plaintiff as stated in the EMS report (Dkt. 81)**

The basis of plaintiff's claims is that the ladder in question *collapsed* while she was using it, causing her to fall and sustain significant injuries. However, the EMS report states that the ladder *slid out* from under plaintiff due to wet pavement, thus causing her to trap and twist her left ankle in the rung and fall backwards onto the driveway with the ladder on top of her. Plaintiff seeks to have the EMS report deemed inadmissible as hearsay, given that the author of the report, paramedic Joe Stellwagon, claimed that he: (1) does *not* know how he derived those statements, but (2) *does* know that they did not come from plaintiff.

Defendant opposes this request, noting that: (1) the parties stipulated in the Pretrial Report that "[a]ll medical records and medical bills previously exchanged during discovery" are admissible; (2) the EMS report is a business record containing an admission, and is thus an

6

exception to the hearsay rule; and (3) the EMS report is otherwise reliable, which is an issue for the jury to weigh.

Plaintiff sets forth several theories in an attempt to undermine the reliability of Stellwagon's EMS report. While it is true that Stellwagon has no independent memory of what happened on July 20, 2010, he testified that he is confident that what he wrote in his report that day is exactly what happened as it was told to him. Stellwagon testified that his employer requires him to submit his EMS reports within twenty-four hours of a call and that the reports are "ideally completed at the hospital." Dkt. 98-2, at 4. In this case, if Stellwagon indeed completed the EMS report while at the hospital with plaintiff, he would have done so within fifteen minutes of first encountering plaintiff on scene. Stellwagon testified that he arrived on scene at 12:47 pm and arrived at the hospital with plaintiff at approximately 1:00 pm. Dkt. 98-2, at 8-9.

The contested portion of the EMS report reads as follows:

> She stated that she was outside on her driveway standing on a ladder about 2 feet off the ground or 2 rung when the ladder started to slide out from under her due to wet pavement causing her to trap and twist her left ankle in the rung and falling backwards onto the driveway with the ladder on top of her.

Dkt. 98-1, at 2. Plaintiff alleges that Stellwagon stated that "he does not know he derived those statements. That if they had come from Tracy Thomas, they would have been in quotes in the narrative and they are not." Dkt. 82, at 2. Plaintiff suggests that Stellwagon might have simply been observing what he saw upon arriving at the scene or summarizing what others told him. Dkt. 82, at 2.

However, Stellwagon testified numerous times that the "she" in the phrase "she stated" referred to plaintiff and that he had no reason to believe that plaintiff did not make that statement to him. Dkt. 98-2, at 5, 6, 12, 13. He also testified that he did not have "anything that states that there was a neighbor or a spouse or somebody that [he] was speaking to." Dkt. 98-2, at 5.

Plaintiff draws the court's attention to the following testimony:

Q: The reason I ask is because Tracy gave a deposition in this case . . . and indicated that a neighbor was there with her on the pavement when you guys arrived . . . You don't have any reason . . . to dispute that at all?

A: No, I don't – don't recall it.

Q: And, in fact, as your report's worded, it's quite possible the neighbor could have been filling you in on some of the details as well?

A: Very well could have been, yeah.

. . . .

Q: And if Tracy had used the words specifically ladder slid out due to wet pavement, you probably would have put that in quotes, correct?

A: I probably would have put that in quotes.

Q: And the fact that you didn't, could indicate that you were kind of putting information together from different sources and probably what you observed at the scene, correct?

. . . .

A: Correct.

Q: And – and you potentially could observe the – the ground being wet . . . ladder on the ground and then concluded that the ladder slid out due to the water . . . is that correct?

A: Correct.

. . . .

A: The only reason I would probably put slide in there is because someone told me that the ladder slid, so.

Q: Okay. And like, as you said, you don't know if that would . . . have been Tracy or a neighbor or anybody else?

A: Correct. I can't tell you for sure.

Dkt. 98-2, at 9-10.

8

It is important to note, however, that while Stellwagon testified that "if there's something really specific that [a patient] stated and I'm like, oh, that's really good stuff, I'll put it in quotations . . . ." (Dkt. 98-2, at 5), he *never* testified that he *always* puts what the patient told him in quotations.  Furthermore, Stellwagon testified that, based on his report, he was comfortable testifying that: (1) plaintiff told him that the ladder slipped out from under her due to wet pavement, and (2) that the pavement was indeed wet.

Whether or not Mr. Stellwagon's words constitute hearsay is irrelevant to determining whether the EMS report should be admitted.  A Pretrial Order "supersedes all pleadings and controls the subsequent course of the case." *Boardwalk Apts., L.C. v. State Auto Prop. & Cas. Ins. Co.*, 2014 U.S. Dist. LEXIS 82774, at *2 (D. Kan. Jun. 18, 2014) (citing FED. R. CIV. P. 16(e); D. KAN. RULE 16.2(b)).  In the Pretrial Order dated June 17, 2014, the parties *stipulated* to the admissibility of "[a]ll medical records and medical bills previously exchanged during discovery." Dkt. 48, at 3.  At no point did plaintiff seek this stipulation with the exception of the EMS report.  In fact, plaintiff's counsel classified the report as a "medical record" when deposing Stellwagon.  Dkt. 98-2, at 13.  To now bar this report would be highly prejudicial to defendant who has, since June 2014, prepared its trial strategy on the understanding that *all* medical records, including the EMS report, would be deemed admissible.  The mere fact that this report may be damaging in some way to plaintiff's case is not sufficient to have it deemed inadmissible.

Therefore, plaintiff's motion to bar mention of the ladder slipping out from under plaintiff as stated in the EMS report is denied.

### 5.     Motion to bar mention of plaintiff's previous fall from another ladder (Dkt. 83)

Plaintiff's 2010 fall is not the first time she has fallen off of a ladder. It has been established that plaintiff suffered a previous fall from a different ladder in 2002. Plaintiff seeks to bar any mention of this previous fall on the grounds that it is irrelevant and may create prejudice.

Defendant opposes this request, noting that plaintiff herself intends to enter evidence of her entire medical history, *including* the injuries she suffered in the 2002 fall. Furthermore, plaintiff repeatedly stated during her deposition that she used a heightened standard of care when using the ladder in question *because of* her 2002 fall. Defendant fears that if it is barred from mentioning the earlier fall, the jury could be confused into believing that plaintiff's injuries sustained in 2002 were incurred in the accident that is the basis for this lawsuit

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Here, evidence of a previous fall certainly seems to make plaintiff's possible contributory negligence more probable than it would be without it. As such, it is relevant. The question then becomes whether admission of this evidence would somehow be prejudicial to plaintiff. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Plaintiff argues that there is no evidence that the injuries she sustained in 2002 have any connection to or relationship with those she sustained in 2010. Based on this, it is possible to understand how introducing evidence of her 2002 fall might confuse the issue and/or create

unfair prejudice. However, one of defendant's theories is contributory negligence, a defense which could certainly benefit from admission of evidence that establishes that this is not the first time plaintiff has fallen off of a ladder. Moreover, just because plaintiff's experts do not draw any connection between the two accidents does not mean that a jury will do the same, especially if plaintiff plans on submitting her *entire* medical record. This presents a real fear that the jury will attribute all of plaintiff's injuries to the 2010 incident and hold defendant liable.

Therefore, plaintiff's motion to bar mention of her previous fall from another ladder is denied.

### 6.     Motion to exclude all expert opinions that were not timely disclosed (Dkt. 85)

Plaintiff seeks to prohibit defendant from making reference to any concepts not timely disclosed by defendant's experts. More specifically, plaintiff requests that this court bar any reference to the findings of psychiatrist Dr. Jeremy A. Burd, who evaluated plaintiff, on the issues of malingering and/or secondary gain. According to plaintiff, Dr. Burd never mentioned these conditions by name in his written report and defendant should thus be prohibited from referencing them at trial. Defendant opposes this motion, arguing that Dr. Burd alluded to these conditions in his written report and was engaged by plaintiff's counsel in significant dialogue about the conditions during his deposition.[1]

While defendant admits that Dr. Burd never used the specific words "secondary gain and/or malingering" in his written report, it contends that he identified several facts that supported this conclusion. For example, Dr. Burd noted that plaintiff, in discussing the financial status of her advertising business, stated that she "hopes that she will get a big financial award

---

[1] Under the Second Amended Scheduling Order, defendant was to disclose all of its liability and damages experts by April 18, 2014. Dkt. 33. There does not seem to be any question that defendant disclosed Dr. Burd in accordance with that order.

11

from her lawsuit because she does not have enough income for her future." Dkt. 98-5, at 4. Plaintiff certainly seemed to have picked up on what Dr. Burd was alluding to, as her counsel spent a great deal of time questioning Dr. Burd about malingering and/or secondary gain. Dr. Burd admitted that he did not use these specific words in his report, mostly because such conditions are not considered actual psychiatric diagnoses. Dkt. 86-2, at 2. However, he later testified that the potential secondary gain for plaintiff, as he noted in his report, was that plaintiff was looking for "a way to make it financially for the next couple of years." Dkt. 86-2, at 6.

Because of plaintiff's counsel's *extensive* questioning of Dr. Burd on the issues of malingering and secondary gain, it seems unfair to allow plaintiff to now assert that she had no idea of these concepts. In truth, plaintiff has been aware of the possibility of these issues since her *own* witness, Dr. Dale Halfaker, first raised this as a possible explanation for plaintiff's behavior in his deposition in March 2014. Dr. Burd's deposition did not take place until June 2014. Dkt. 86-2.

Therefore, plaintiff's motion to exclude all expert opinions that were not timely disclosed is denied.

### 7. Motion to bar any mention of medical issues unrelated to the fall that is the subject of this suit (Dkt. 87)

On a somewhat related note, Plaintiff also seeks to bar mention of *any* medical issues unrelated to the fall that is the subject of this suit, namely the injuries she sustained in her 2002 ladder fall and her gynecological issues. According to plaintiff, introduction of this evidence would only confuse the issues and create prejudice. Defendant opposes this motion, noting plaintiff's allegation of continuing psychological and physical injuries stemming from her 2010 ladder incident. Plaintiff intends to offer as a witness a life care planner that will testify that she needs additional medical treatment and other financial assistance on account of these disabilities.

There is also evidence that the other physical ailments are at least a partial cause of plaintiff's alleged psychological problems. Defendant therefore seeks admission of this evidence.

As stated above, mention of plaintiff's injuries sustained as a result of her 2002 fall are admissible. While, upon first blush, there does not appear to be any need for defendant to bring up plaintiff's gynecological issues, the bigger concern is with regard to plaintiff's psychological issues, which she claims she only suffers as a result of the accident. According to defendant, however, there is at least some evidence that *other* physical ailments, *not* those sustained as a result of her 2010 fall, contribute, at least in part, to these claimed psychological issues. Defendant does not go into detail in its motion as to what other physical ailments may contribute to these alleged psychological issues.

In accordance with the ruling made at trial based on the evidence presented, plaintiff's motion to bar any mention of medical issues unrelated to the 2010 fall is denied.

### 8. Motion to bar any suggestions that the useful safe life of the ladder had expired (Dkt. 89)

The ladder at issue in this case was purchased in 1992. Plaintiff's expert testified that the ladder should have a useful life well above twenty (20) years. Defendant, through its corporate representative, admitted that the useful life of the ladder could be up to forty (40) years. Plaintiff seeks to bind defendant to the admission of its representative and therefore prohibit defendant from suggesting that the useful safe life of the ladder had expired at the time of plaintiff's fall in 2010.

Defendant opposes this motion, citing K.S.A. § 60-3303 which provides that the use of a product beyond its "useful safe life" bars claims stemming from that product and that a manufacturing defendant is entitled to a presumption that a product older than ten (10) years is beyond its "useful safe life" unless a plaintiff can overcome that presumption by clear and

13

convincing evidence. Defendant states that it will provide evidence that a ladder's "useful safe life" is contingent upon the use of that ladder and, therefore, the mere fact that a ladder *may* be useable beyond ten (10) years is not sufficient to rebut the presumption.

Under Kansas law, the use of a product beyond its "useful safe life" bars claims stemming from that product. K.S.A. § 60-3303. "In claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired." K.S.A. § 60-3303(b)(1). This presumption may *only* be rebutted by clear and convincing evidence. *Id*. Plaintiff is certainly permitted to rebut this presumption, but defendant is not, at this stage, bound by any alleged admission on the part of defendant.

Therefore, plaintiff's motion to bar any suggestion that the useful safe life of the ladder had expired is denied.

**B.     Defendant's Motion in Limine**

      **1.     Motion to exclude all other accidents or lawsuits (Dkt. 93)**

Defendant seeks to exclude all evidence, testimony, or argument relating to other ladder incidents or lawsuits based on its prediction that plaintiff may attempt to introduce evidence of unrelated and irrelevant ladder accidents or lawsuits. It alleges that reference to such incidents or lawsuits will create a "series of mini-trials," diverting time and attention away from the matter at hand and creating prejudice.

"Both federal and Kansas law permit the introduction of substantially similar accidents in strict products liability actions to demonstrate notice, the existence of a defect, or to refute testimony given by a defense witness that a given product was designed without safety hazards." *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir. 1988) (internal citations omitted). Before introducing this evidence, "the party seeking its admission must show the circumstances

14

surrounding the other accidents were substantially similar to the accident involved in the present case." *Id*. (internal citations omitted). It is preferable that the trial judge decide this issue outside the presence of the jury. *Id*.

> Whether accidents are substantially similar depends largely upon the theory of the case: Differences in the nature of the defect alleged may affect a determination whether the accidents are substantially similar . . . How substantial the similarity must be is in part a function of the proponent's theory of proof. Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury. The requirement is relaxed, however, when the evidence of other accidents is submitted to prove notice or awareness of the potential defect. Any differences in the accidents not affecting a finding of substantial similarity go to the weight of the evidence.

*Id*. at 1407-08 (internal citations omitted); *see also Heer v. Costco Wholesale Corp.*, 2014 U.S. App. LEXIS 20863 (10th Cir. Oct. 29, 2014) (holding on summary judgment, under the same standard used in a trial context, that evidence of two other lawsuits involving the same product (a step stool) was not sufficient because the plaintiff failed to present any evidence that the circumstances surrounding the other accidents were substantially similar to the circumstances of her accident).

Here, defendant anticipates that plaintiff will offer a series of unrelated ladder accidents without sufficient context and detail to satisfy the substantially similar standard. In the event that plaintiff does choose to compare the present case with other accidents and/or lawsuits, the court will need to review the proposed proffered cases outside the presence of the jury to determine if the other cases satisfy the substantially similar standard.

Additionally, defendant fears that plaintiff will attempt to use a comparison made by her ladder expert, John Morse, that the ladder in question is defective. However, defendant points out that the other ladder used by Mr. Morse for comparison purposes was a completely different model.

In accordance with the ruling made at trial based on the evidence presented, defendant's motion to exclude other accidents or lawsuits is granted.

**2.      Exclude evidence regarding defendant's QuickLatch device (Dkt. 111)**

Defendant also requests that the court exclude all evidence, testimony, or argument relating to its "QuickLatch" device. According to defendant, this QuickLatch device was not incorporated into defendant's ladders until *after* plaintiff purchased the ladder at issue and years before defendant became associated with Cuprum.

Under Kansas law, in a product liability claim, the following evidence is not admissible for any purpose:

> (1)     evidence of any advancements or changes in technical or other knowledge or techniques, in design theory or philosophy, in manufacturing or testing knowledge, techniques or processes in labeling, warning of risks or hazards, instructions for the use of such product, if such advancements or changes have been made, learned or placed into common use subsequent to the time the product in issue was designed, formulated, tested, manufactured or sold by the manufacturer; and
>
> (2)     evidence of any changes made in the designing, planning, formulating, testing, preparing, manufacturing, packaging, warnings, labeling or instructing for use of, or with regard to, the product in issue, or any similar product, which changes were made subsequent to the time the product in issue was designed, formulated, tested, manufactured or sold by the manufacturer.

K.S.A. § 60-3307(a)(1), (2). In 2005, the Kansas Supreme Court held that the trial court committed reversible error by admitting evidence of advancements in technology by the defendant. *Griffin ex rel. Green v. Suzuki Motor Corp.*, 124 P.3d 57, 74 (Kan. 2005). In *Griffin*, the plaintiff sued a car manufacturer for injuries sustained after a rollover accident involving a 1994 Suzuki Sidekick. *Id*. at 60. The trial court admitted evidence of the vehicle that later replaced the Sidekick, the Suzuki Vitara. The trial court also admitted evidence of testing and engineering standards not in use when the Sidekick was manufactured. *Id*. at 71. On appeal, the

16

Kansas Supreme Court held that neither the Vitara nor the later testing and engineering standards were admissible topics, given K.S.A. § 60-3307(a).

Here, defendant fears that plaintiff may try to introduce evidence of defendant's QuickLatch device. However, defendant began using the QuickLatch device on its ladders *after* Cuprum manufactured the ladder at issue. Moreover, Cuprum never used the QuickLatch device until it merged with defendant in 1998. According to defendant, *no* ladder manufacturer used the QuickLatch device when plaintiff bought the Cuprum ladder at issue.

Therefore, because the QuickLatch device was not used by any manufacturer in 1992, the year in which plaintiff bought the ladder at issue, it qualifies as an advancement under § 66-3307(a). As such, defendant's motion to exclude evidence, testimony, or argument relating to or regarding the QuickLatch device is granted.

**IT IS THEREFORE ORDERED** this 26th day of January, 2015, that plaintiff's Motions in Limine (Dkts. 75, 77, 79, 81, 83, 85, 87, and 89) are hereby granted in part and denied in part to the extent outlined above.

**IT IS FURTHER ORDERED THAT** defendant's Motions in Limine (Dkts. 93, 111) are hereby granted.

s\J. Thomas Marten
J. Thomas Marten,
Chief Judge